# EXHIBIT 31



**Crèdit Andorrà**

*al vostre servei i al servei del país*

# FAX

| Dirigit a : Sr Doyle Merriman | Fax núm: 0013167553106 |
|---|---|
| **Empresa: VALLEY OFFSET PRINTING** | **Data: 3 MAIG 2006** |
| De: Antoni Torrent | **Pàgines: 2** |

Buenos dias,

 Adjuntamos copia de la transferencia emitida en fecha de hoy a su favor por orden de nuestro cliente .

Atentamente,

CREDIT ANDORRA,

ANDORRA LA VELLA, 05.05.06

SERVEIXIN ESMADLIR E ORDRE DE PAGA-
MENT QUE REBSSENTEM A CONTINUACIO

C/O OFICINA SOCIAL
ANDORRA LA VELLA
ANDORRA

NOSTRA REF
*MONEDA
USD          904.275,67

*MOTIU DEL PAGAMENT
INV.0042

*ORDENANT
VEGA STAR CAPITAL, S.A.

*BENEFICIARI
COMPTE: 8741522 ROUTING ABA:1011000
VALLEY OF FED ROUTING: ONE
60/8 SPEEDWAY
VALLEY CENTER KS 67147

*BANC PAGADOR
WACHOVIA BANK NA
11 PENN PLAZA 6TH FLOOR
NEW YORK (ESTATS UNITS)

*BANC DEL BENEFICIARI
INTRUST BANK NA
10 AN MAIN
WICHITA KS 67202 (ESTATS UNITS)

IMPORT                 904.275,67 USD
COMISSIONS                                         904.275,67
DESPESES
COMIN CANVI                                              0,00

TOTAL

DOLARS USD
(Impostos indirectes inclosos 12%)

QUE US AUTORITZEM A CARREGAR AL NOSTRE COMPTE
AUTORITZADA DEBITAR

VALOR 03.05.06
SIGNATURA ORDENANT

# EXHIBIT 32

**Vega Star Capital**
**The Street Stock Report**

Job#: 50760
Est#: 66671T

| Description | Quantity | Unit | Total | | |
|---|---|---|---|---|---|
| Pre Payment | | | $ | (87,959.50) | |
| Pre Payment | | | $ | (901,240.67) | $ (989,200.17) Total Prepaid |
| 8pg Book on 70# Gloss Text 4/4 | 2,126,532 | 0.059608614 | $ | 126,759.63 | |
| Domestic Mailing | 2,095,812 | 0.022677 | $ | 47,526.73 | |
| International Mailing | 6,698 | 0.0590 | $ | 395.18 | |
| Canadian Mailing | 11,559 | 0.0230 | $ | 265.86 | $ 174,947.39 Total Printing & Mailing |
| Postage - Domestic | 2,095,812 | 0.3798 | $ | 796,086.86 | |
| Postage - International | 6,698 | 0.8943 | $ | 5,990.00 | |
| Postage - Canadian | 11,559 | 0.6900 | $ | 7,975.71 | $ 810,052.57 Total Postage |

**Total Due** $ (4,200.21)

# EXHIBIT 33

**Donya Percival**

| | |
|---|---|
| **From:** | Frank Abel [frank@vegastarcapital.com] |
| **Sent:** | Tuesday, April 11, 2006 2:12 PM |
| **To:** | Donya Percival |
| **Subject:** | Re: Return address for international mailing |

we have to keep "printer" name and adress 100% confidentially and hidden from anyone.
What options we have? Any ideas? may be set up a P.O.BOX for The Street Stock Report?

thank you

----- Original Message -----
**From:** Donya Percival
**To:** 'Frank Abel'
**Cc:** 'Robert McDaniel'
**Sent:** Tuesday, April 11, 2006 9:32 PM
**Subject:** Return address for international mailing

Frank,

The envelopes for the international mailing require a return address. What address would you like us to use for this? Do you want to provide us with art, or would you like us to set the copy and email a proof to you?

Thanks!
Donya

8/23/2006

# EXHIBIT 34

# YAHOO! SMALL BUSINESS

Print - Close Window

**From:** "Frank Abel" <frank@abellanhnos.es>

**To:** "doyle merriman" <dmerriman@valleyoffset.com>

**Subject:** Re: GPS Mailer

**Date:** Tue, 4 Apr 2006 00:58:22 +0200

hi doyle!

glad to head that, I am ready to go.
target date? well, when you ready i guess. All I am waiting for is printing. I have wires ready when you give me
final numbers and shedule.
Important not to miss, maximum capacity per day that we can afford

thanks,
frank

—— Original Message ——
**From:** doyle merriman
**To:** Frank Abel
**Sent:** Tuesday, April 04, 2006 12:14 AM
**Subject:** GPS Mailer

Frank

Meet with the owner of Valley Offset this afternoon Fred Bryant. He will be
finalizing the printing contract and will email it to you Tuesday afternoon
April 4,2006.

Due you have a target date for mailing?

If you have any further question, please give me a call at 316-258-9928.

Thanks
Doyle Merriman

# EXHIBIT 35

## Robert McDaniel

**From:** "Frank Abel" <frank@abellanhnos.es>
**To:** "Robert McDaniel" <rmcdaniel@valleyoffset.com>
**Sent:** Wednesday, April 05, 2006 6:48 PM
**Subject:** Re: Answers & Pricing

Robert,

to deliver just 150,000 per day would not work for me; Can't the post office afford more? I thought that we could print all campaign in advance and then deliver at the amount I need. Let's discuss it better.
In respect number of mailers and destination, I will give you more accurate data tomorrow.
I also agreed with Doyle that to protect my lists we would sign a document, and that we could use one of the standard agreements that your company has used with other clients before. I need it urgently so my attorney can review.

thank you,
frank

----- Original Message -----
**From:** Robert McDaniel
**To:** Frank Abel
**Cc:** Doyle Merriman ; Fred Bryant
**Sent:** Thursday, April 06, 2006 12:05 AM
**Subject:** Answers & Pricing

Just dropping you a quick email w/some answers & pricing.  We'll send you a formal letter in the morning along w/non-disclosure agreement.

We would be able to mail on average 150,000/day
The Post Office will accept presorted 1st class mail Monday-Friday, not Saturday

The total printing & mail prep charges are $205,655.00
This is based on printing & mailing 2,500,000 pieces.
2,325,000 Domestic,  125,000 Canadian,  & 50,000 International

The total estimated postage is $902,512.50
This is based on 2,500,000 pieces, but is only an estimate.  Until we see the lists, we cannot know for sure the actual postage costs. Once we receive the lists & process them, we can give you an accurate total of what the postage will be.
Domestic - 2,325,000 @ $0.3285 each
Canadian -   125,000 @ $0.63   each
International - 50,000 @ $1.20   each

At this date, there is plenty of paper at the mill & available to us, although that could change shortly.
When you are ready to order, we will give you an account # to wire money to.
We will need 50% of the printing & mailing costs($102,828.00) before anything starts.
We will also need the postage money in advance of anything going in the mail.
We will need the balance of the printing & mailing costs(102,828.00) before anything goes in the mail.

8/23/2006

# EXHIBIT 36

United States Postal Service

Trays 1- 2143

# Postage Statement — First-Class Mail and Priority Mail

*Use this form for either First-Class Mail or Priority Mail. They may not be combined.*

**Mailer**

Permit Holder's Name and Address and Email Address, If Any

CCI
630 Pennsylvania
Wichita KS 67214

Telephone

Name and Address of Mailing Agent (if other than permit holder)    Telephone

DUPLICATE

Name and Address of Individual or Organization for Which Mailing Is Prepared (if other than permit holder)

The Street Stock Report

CAPS Cust. Ref. No. _____
Dun & Bradstreet No. _____

Post Office: Note Mail Arrival Date & Time

**Mailing**

Post Office of Mailing
Wichita KS

Type of Postage — Permit #
1148

Processing Category
☐ Letters
☐ Flats
☒ Automation Flats (DMM 301.3)
☐ Parcels

Type of Postage
☒ Permit Imprint
☐ Precanceled Stamps
☐ Metered

For Mail Enclosed Within Another Class
☐ Standard Mail ☐ Bound Printed Matter ☐ Library Mail ☐ Media Mail ☐ Parcel Post
☐ Periodicals

Mailing Date
5-16-06

Weight of a Single Piece
_____ pounds

Dun & Bradstreet No. _____

Federal Agency Cost Code

Dun & Bradstreet No. _____

Statement Seq. No.
74589

Total Pieces
526123

Total Weight

No. & Type of Containers
2143 Flat Trays

For Automation Rate Pieces, Enter Date of Address Matching and Coding (DMM 708.3.3)
4 / 2006

For Automation Carrier Route Rate Pieces, Enter Date of Address Matching and Coding (DMM 708.3.3)
__ / __ / __

Parts Completed (Select all that apply) ☐ A ☒ B ☐ C ☐ D ☐ E ☐ F ☐ S

**Postage**

**Total Postage** (Add parts totals)    197822.248

Rate at Which Postage Affixed (Check one) (DMM 234.1.1)
☐ Correct   ☐ Lowest   ☐ Neither

_____ pcs. x $ _____ . _____ = **Postage Affixed**

**Net Postage Due** (Subtract postage affixed from total postage)    197822.25

For USPS Use Only: Additional Postage Payment (State reason)

Total Adjusted Postage Affixed

Permit Imprint Only (Check One): ☐ AIC 121
PM Report Total Postage to AIC: ☐ AIC 237

Total Adjusted Postage Permit Imprint

**Certification**

The mailer's signature certifies acceptance of liability for and agreement to pay any revenue deficiencies assessed on this mailing, subject to appeal. If an agent signs this form, the agent certifies that he or she is authorized to sign on behalf of the mailer and that the mailer is bound by the certification and agrees to pay any deficiencies. In addition, agents may be liable for any deficiencies resulting from matters within their responsibility, knowledge, or control. The mailer hereby certifies that all information furnished on this form is accurate, truthful, and complete; that the mail and the supporting documentation comply with all postal standards and the mailing qualifies for the rates and fees claimed; and that the mailing does not contain any matter prohibited by law or postal regulation. I understand that anyone who furnishes false or misleading information on this form or who omits information requested on this form may be subject to criminal and/or civil penalties, including fines and imprisonment.

*Privacy Notice: For information regarding our Privacy Policy visit www.usps.com.*

Signature of Mailer or Agent

Printed Name of Mailer or Agent Signing Form

Telephone
2650879

**USPS Use Only**

Weight of a Single Piece
_____ pound

Are postage figures at left adjusted from mailer's entries? If yes, reason:   ☐ Yes   ☐ No

Total Pieces          Total Weight

Total Postage

Check One
☐ Presort Verification Not Scheduled
☐ Presort Verification Performed as Scheduled

I CERTIFY that this mailing has been inspected concerning: (1) eligibility for postage rates claimed; (2) proper preparation  (and presort where required); (3) proper completion of postage statement; and (4) payment of annual fee  (if required).

Verifying Employee's Signature

Verifying Employee's Name

Round Stamp (Required)

WICHITA KS BUSINESS MAIL ENTRY
MAY 16 2006
USPS

Date Mailer Notified    Contact    By (initials)    Time    AM PM

PS Form 3600-R1, January 2006 (Page 1 of 3)  PSN 7530-07-000-6217    This form and mailing standards available on Postal Explorer at pe.usps.com

Trays 2144- 4009

United States Postal Service
# Postage Statement — First-Class Mail
## and Priority Mail

*Use this form for either First-Class Mail or Priority Mail. They may not be combined.*

Post Office: Note Mail Arrival Date & Time

DUPLICATE

**Mailer**

| Permit Holder's Name and Address and Email Address, If Any | Telephone | Name and Address of Mailing Agent *(If other than permit holder)* | Telephone | Name and Address of Individual or Organization for Which Mailing Is Prepared *(If other than permit holder)* |
|---|---|---|---|---|
| CCI 630 Pennsylvania Wichita Ks 67214 | | | | The Street Stock Report |

CAPS Cust. Ref. No. _____
Dun & Bradstreet No. _____  |  Dun & Bradstreet No. _____  |  Dun & Bradstreet No. _____

**Mailing**

| Post Office of Mailing | Processing Category | Mailing Date | Federal Agency Cost Code | Statement Seq. No. | No. & type of Containers |
|---|---|---|---|---|---|
| Wichita Ks | ☐ Letters ☐ Flats ☒ Automation Flats (DMM 301.3) ☐ Parcels | 5-17-06 | | 74589 | 1866 Flat Trays |
| Type of Postage: ☒ Permit Imprint ☐ Precanceled Stamps ☐ Metered | | Weight of a Single Piece _____ pounds | | Total Pieces 526426 | |
| Permit # 1148 | For Mail Enclosed Within Another Class ☐ Periodicals ☐ Standard Mail ☐ Bound Printed Matter ☐ Library Mail ☐ Media Mail ☐ Parcel Post | | | Total Weight | |

For Automation Rate Pieces, Enter Date of Address Matching and Coding (DMM 708.3.3)
_4__ / _1__ / _2006_

For Automation Carrier Route Rate Pieces, Enter Date of Address Matching and Coding (DMM 708.3.3)
___ / ___ / _____

**Postage**

Parts Completed *(Select all that apply)* ☐A ☒B ☐C ☐D ☐E ☐F ☐S

| | **Total Postage** *(Add parts totals)* | 197936.176 |
|---|---|---|

Rate at Which Postage Affixed *(Check one) (DMM 234.1.1)* ☐ Correct ☐ Lowest ☐ Neither

_____ pcs. x $ _____ . _____ = **Postage Affixed**

**Net Postage Due** *(Subtract postage affixed from total postage)*  |  197936.18

For USPS Use Only: Additional Postage Payment (State reason):
For postage affixed add additional payment (level postage due) for permit imprint add additional payment to total postage.
Permit Imprint Only: Check One ☐ AIC 121 *(First-Class Mail)*  **Total Adjusted Postage Affixed**
PM Report Total Postage in AIC ☐ AIC 237 *(Priority Mail)*  **Total Adjusted Postage Permit Imprint**

**Certification**

The mailer's signature certifies acceptance of liability for and agreement to pay any revenue deficiencies assessed on this mailing, subject to appeal. If an agent signs this form, the agent certifies that he or she is authorized to sign on behalf of the mailer and that the mailer is bound by the certification and agrees to pay any deficiencies. In addition, agents may be liable for any deficiencies resulting from matters within their responsibility, knowledge, or control. The mailer hereby certifies that all information furnished on this form is accurate, truthful, and complete; that the mail and the supporting documentation comply with all postal standards and the mailing qualifies for the rates and fees claimed; and that the mailing does not contain any matter prohibited by law or postal regulation. I understand that anyone who furnishes false or misleading information on this form or who omits information requested on this form may be subject to criminal and/or civil penalties, including fines and imprisonment.

*Privacy Notice: For information regarding our Privacy Policy visit www.usps.com.*

| Signature of Mailer or Agent | Printed Name of Mailer or Agent Signing Form | Telephone 2650879 |
|---|---|---|

**USPS Use Only**

| Weight of a Single Piece _____ pound | Are postage figures at left adjusted from mailer's entries? If yes, reason: ☐ Yes ☐ No |
|---|---|
| Total Pieces | Total Weight |
| Total Postage | |

Check One
☐ Presort Verification Not Scheduled  ☐ Presort Verification Performed as Scheduled

I CERTIFY that this mailing has been inspected concerning: (1) eligibility for postage rates claimed; (2) proper preparation *(and presort where required)*; (3) proper completion of postage statement; and (4) payment of annual fee *(if required)*.

Round Stamp *(Required)*

WICHITA KS BUSINESS MAIL ENTRY
MAY 17 2006
USPS

| Verifying Employee's Signature | Date Mailer Notified | Contact | By *(Initials)* |
|---|---|---|---|
| | Verifying Employee's Name | Time | AM PM |

PS Form 3600-R1, January 2006 *(Page 1 of 3)*  PSN 7530-07-000-6217   This form and mailing standards available on Postal Explorer at *pe.usps.com*.

*Trays 4010-7017* *DUPLICATE*

United States Postal Service

# Postage Statement — First-Class Mail and Priority Mail

**Use this form for either First-Class Mail or Priority Mail. They may not be combined.**

Post Office: Note Mail Arrival Date & Time

**Mailer**

| Permit Holder's Name and Address and Email Address, If Any | Telephone | Name and Address of Mailing Agent (If other than permit holder) | Telephone | Name and Address of Individual or Organization for Which Mailing Is Prepared (If other than permit holder) |
|---|---|---|---|---|
| CCI 630 Pennsylvania Wichita Ks 67214 | | *Valley Offset* | | Street Stock Report |

CAPS Cust. Ref. No. _____
Dun & Bradstreet No. _____

Dun & Bradstreet No. _____

Dun & Bradstreet No. _____

**Mailing**

| Post Office of Mailing | Processing Category | Mailing Date | Federal Agency Cost Code | Statement Seq. No. | No. & type of Containers |
|---|---|---|---|---|---|
| Wichita Ks | ☐ Letters ☒ Flats ☒ Automation Flats (DMM 301.3) ☐ Parcels | 5-18-06 | | 74589 | 3008 Flat Trays |

Type of Postage: ☒ Permit Imprint ☐ Precanceled Stamps ☐ Metered

Weight of a Single Piece _____ pounds

Total Pieces: 1043263

Total Weight

Permit # 1148

For Mail Enclosed Within Another Class: ☐ Periodicals ☐ Standard Mail ☐ Bound Printed Matter ☐ Library Mail ☐ Media Mail ☐ Parcel Post

For Automation Rate Pieces, Enter Date of Address Matching and Coding (DMM 708.3.3): 4 / 1 / 2006

For Automation Carrier Route Rate Pieces, Enter Date of Address Matching and Coding (DMM 708.3.3): ___ / ___ / ___

Parts Completed (Select all that apply) ☐ A ☒ B ☒ C ☐ D ☐ E ☐ F ☐ S

**Postage**

**Total Postage** (Add parts totals) | 400328.426

Rate at Which Postage Affixed (Check one) (DMM 234.1.1) ☐ Correct ☐ Lowest ☐ Neither

_____ pcs. x $ _____ . _____ = **Postage Affixed**

**Net Postage Due** (Subtract postage affixed from total postage) | 400328.43

For USPS Use Only: Additional Postage Payment (State reason)

For postage affixed add additional payment to net postage due. For Permit imprint add additional payment to total postage.

**Total Adjusted Postage Affixed**

Permit Imprint Only – Check One ☐ AIC 121 (First-Class Mail) PM Report: Total Postage in AIC ☐ AIC 237 (Priority Mail)

**Total Adjusted Postage Permit Imprint**

**Certification**

The mailer's signature certifies acceptance of liability for and agreement to pay any revenue deficiencies assessed on this mailing, subject to appeal. If an agent signs this form, the agent certifies that he or she is authorized to sign on behalf of the mailer and that the mailer is bound by the certification and agrees to pay any deficiencies. In addition, agents may be liable for any deficiencies resulting from matters within their responsibility, knowledge, or control. The mailer hereby certifies that all information furnished on this form is accurate, truthful, and complete; that the mail and the supporting documentation comply with all postal standards and the mailing qualifies for the rates and fees claimed; and that the mailing does not contain any matter prohibited by law or postal regulation. I understand that anyone who furnishes false or misleading information on this form or who omits information requested on this form may be subject to criminal and/or civil penalties, including fines and imprisonment.

Privacy Notice: For information regarding our Privacy Policy visit www.usps.com.

| Signature of Mailer or Agent | Printed Name of Mailer or Agent Signing Form | Telephone |
|---|---|---|
| | | 2650879 |

**USPS Use Only**

Weight of a Single Piece _____ pound

Are postage figures at left adjusted from mailer's entries? ☐ Yes ☐ No If yes, reason: _____

| Total Pieces | Total Weight |
|---|---|
| | |

Total Postage

Check One
☐ Presort Verification Not Scheduled
☐ Presort Verification Performed as Scheduled

I CERTIFY that this mailing has been inspected concerning: (1) eligibility for postage rates claimed; (2) proper preparation (and presort where required); (3) proper completion of postage statement; and (4) payment of annual fee (if required).

| Verifying Employee's Signature | Verifying Employee's Name | Time | AM PM |
|---|---|---|---|
| | | | |

Date Mailer Notified | Contact | By (Initials)

Round Stamp (Required)

WICHITA KS BUSINESS MAIL ENTRY — MAY 18 2006 — USPS

PS Form 3600-R1, January 2006 (Page 1 of 3) PSN 7530-07-000-6217   This form and mailing standards available on Postal Explorer at pe.usps.com.

# EXHIBIT 37

# THE STREET STOCK REPORT

*Where Retail Investors Turn Dreams Into Reality*

Special Edition, Spring 2006                                    www.TheStreetStockReport.com

# THIS **GPS** STOCK COULD SOAR OVER 1,000%



**The projected global market value for GPS technology: $757 BILLION!**

**Find out how to get your share by capitalizing on this stock!**

**Early investors could MAKE A FORTUNE WITH GHLT!**

**GHLT has formed relationships with companies valued in the $2-$76 billion range and, in 2005, experienced Revenue/ Net Income Growth of 609% and 1,160 %**

**Commercial and consumer GPS systems are in their early stages of growth, similar to the wireless phone industry in the early 1990's.**

**It is predicted that every person worldwide will be operating vehicles containing GPS systems.**

**Stocks within this emerging sector gained anywhere from 800% to 1500%. See why GHLT may be next...**



**I am recommending that my subscribers buy GHLT aggressively under $5, as it will likely follow other GPS stocks like LEIX, TRMB and NXTL, that started from $2-$5 and went to $30-$40!!**

## Dear Investor:

My name is Michael Cohen, and I have been a specialist for over 30 years now in identifying **small-cap, value-oriented stocks** within emerging sectors. My great success has been due to my ability to discover these small-cap plays before Wall Street analysts have the opportunity to drive them higher. My subscribers have gained significant returns each year since 1998, but I have decided to offer investors, like yourself, this complimentary report as I believe you will be astounded with the potential this emerging GPS market offers and the return this stock will line your pockets with!! Don't miss this opportunity to GROW your portfolio by capitalizing on this valuable information.

I have found a small cap IPO that just started trading involved in a very exciting and emerging sector, GPS Technologies. Some stocks in this sector have already realized tremendous percentage gains including NXTL (1,006%), TRMB (800%) and LEIX (1,441%).

This report is focusing on **GHL Technologies, Inc. (Ticker: GHLT)** and they have gone public at a very attractive price. I am expecting this stock to follow the trends of the other successful GPS stocks in terms of the potential gains it will provide. GHLT is starting out at a very similar level to LEIX, which went from $2.40 to $37 in just 28 months!

## DON'T WAIT TO TAKE ACTION! ONCE THE SMART MONEY DISCOVERS GHLT, THIS STOCK COULD START TO MOVE QUICKLY AND NEVER SEE THESE LOW PRICES AGAIN!



How GPS will revolutionize the way we live, work & drive, and how smart investors can make MASSIVE PROFITS!

**It is predicted that every person worldwide will be operating vehicles, both new and used, that employ GPS systems. Think about how large a number that is?**

# EVERY VEHICLE IN THE WORLD!

The stock, GHL Technologies, Inc. (Ticker: GHLT) is set to cash in on a huge trend now gaining momentum around the world. Every driver on the road is starting to see the advantage of having an on-board GPS system that provides navigation, roadside assistance, vehicle tracking... even theft prevention!

Millions of car and truck owners are lining up to have these advanced systems installed, making this a $757 billion industry by 2017!

Read the full story inside and find out how GHL Technologies, Inc. has found the perfect niche within this multi-billion dollar market ... how it's poised to rake in enormous revenues from some lucrative contracts ... and why it could follow in the footsteps of another GPS leader who GHLT has a partnership with, TRMB, which gained 800% in just 36 months and has a stock valuation of $2.42 billion.

## GHLT STOCK COULD SEE A 500%-1,000% PROFIT IN THE COMING MONTHS!



## OUR FEATURED

# GHL Technologies, Inc.

Y ou have been sent this alert because you are among the few investors who can recognize - and act on - investment opportunities that potentially offer **gains of 500%-1,000%.**

## Here's why investing in GHL Technologies today could offer sky-high returns.

GHL Technologies Inc. is an acquisitions company whose primary focus is the formation of partnerships between companies that are positioned on the forefront of the emerging GPS industry.

Commercial and consumer GPS telematics are in their early stages of growth similar to that of the wireless phone industry in the early 1990's. Only 9% of the market is utilizing the benefits of this cutting edge technology, leaving over 90% potential market penetration. By establishing roots in an industry with such room for growth, and strengthening relationships with companies who will promote that growth, GHL Technologies Inc. has a strong foothold on their future in the 12-volt market.



C K P I C K :

GHLT needs to capture only 0.14% of this $757 billion market to realize

$1BILLION IN REVENUE!

GHL

The company is poised for 500% returns ... OR MORE!

## GPS Market to Reach $757 Billion by 2017

Combining Global Positioning System tracking (GPS) with wireless communications and advanced computing has become a key technology for automobiles.

When installed in cars and trucks, GPS devices provide incredible benefits - including on-board navigation, automatic roadside assistance, vehicle tracking, theft prevention and remote diagnostics. And it's a huge business!

- Every day around the world more than 20,000 vehicles are fitted with a GPS system - that's 7.3 million cars and trucks a year!
- According to a report from Research & Consultancy OutSourcing Svcs., total revenues from GPS applications will reach a stunning $757 billion by the year 2017.

Here's where GHL Technologies comes in. The GPS manufacturers prefer to outsource installation and maintenance of these systems, so they turn to independent installers like GHLT.

This is one of those "hidden" niches hardly anyone ever hears about. The spotlight is always on the high-profile manufacturers with their new gizmos and technology.

Meanwhile, behind the scenes, a company like GHLT is quietly making money hand over fist installing the systems - with no need to spend a dime on R&D, manufacturing, or mass advertising. GHLT also has a major contract with **Trimble Navigation Ltd. (NASDAQ: TRMB)**. The great thing about this contract is that Trimble has partnered with **Sprint Nextel Corp. (NYSE: S)** for their GPS solution applications. So now you see what's developing here....

To read more....Visit our website and get the FULL report for free!

**www.TheStreetStockReport.com**

# On-board GPS can be used for a number of applications including....

## Navigation
A GPS unit can direct a driver to a desired location, while providing real-time traffic information along the way.

## Emergencies
If an accident occurs, the system notifies emergency services and relays the exact location, allowing faster, more accurate response.

## Theft Prevention
Police can use installed GPS systems to track down stolen vehicles-sometimes retrieving the car or truck in less than an hour.

## Commercial Vehicle Tracking
Trucking companies can install telematics units on their rigs to keep track of where the trucks are at all times.

## Taxis
When dispatchers know where all the taxis are, they can make more efficient use of the fleet and serve the customers better.

## Military
Because the devices offer so many uses, the Department of Defense plans to equip each soldier and military vehicle with a GPS receiver.



COMPANY **GHL Technologies, Inc.**

STOCK SYMBOL **GHLT**

RECOMMENDATION **STRONG BUY**

NOTE: GHL Technologies, Inc. is the parent company of Emergency Vehicle Installations, Inc. (EVI) trading under the symbol GHLT

www.ghltechnologies.com
www.evigps.com

How GPS will change the way we work, live, drive and MAKE YOU FINANCIALLY INDEPENDENT

# GHLT has shown remarkable year-over-year Growth/Profitability with Revenue/Net Income increasing 609% and 1,160% in 2005

The company profiled in this magazine – **GHL Technologies, Inc. (Ticker: GHLT)** – operates in a highly profitable niche of the growing GPS industry. It provides crucial services to this multi-billion market, and it's well-positioned to sign lucrative contracts with some of the biggest players in the industry. This year alone, GHLT's share value could more than quadruple as the company expands its services in this booming market!

One of the fastest-growing segments in the GPS industry is the commercial vehicle market. More than 25 million commercial vehicles and 5 million truck trailers are on the roads in North America. Nearly all of them could benefit by having new GPS systems on-board — to boost productivity, reduce risk and costs, and increase safety and security.

Other commercial markets include emergency vehicles, government and police vehicles, rental cars, and field equipment. GHLT sees the greatest potential and the highest profit margins here. By focusing on commercial vehicle GPS Applications, GHLT stands to earn massive revenues.

The Company's recent acquisition of industry-veteran Emergency Vehicle Installations, Inc. (EVI) puts them in a position to profit from the huge growth in all GPS Applications. We expect to see strong sales in 2006-2007 with significant revenues adding value to the company.

Should you buy this stock? If you like the idea of seeing your money multiply many times over, consider buying this stock while it's unknown and still selling for less than $5 per share.

## Make sure you take appropriate action before its too late!
### For more information, visit www.TheStreetStockReport.com

**IMPORTANT DISCLAIMER & DISCLOSURE:** The Street Stock Report (TSSR) profiles are not a solicitation or recommendation to buy, sell or hold securities. TSSR is not offering securiti for sale. All statements and expressions are the sole opinion of the editor and are subject to change without notice. Verify all claims and do your own due diligence. TSSR is not liable for a investment decisions by its readers or subscribers. It is strongly recommended that any purchase or sale decision be discussed with a financial adviser, or a broker-dealer, or a member of a financial regulatory bodies. The information contained herein has been provided as an information service only. The accuracy or completeness of the information is not warranted and is only reliable as the sources from which it was obtained. It should be understood there is no guarantee that past performance will be indicative of future results. Investors are cautioned that they m lose all or a portion of their investment in this or any other company. In order to be in full compliance with the Securities Act of 1933, Section 17(b), TSSR and its management fully disclose tl they receive fees from profiled companies or agents representing the profiled companies. These fees may be paid in cash or in stock and they will be fully disclosed in each profile. Since TS: receives compensation and its employees or members of their families may hold stock in the profiled companies, there is an inherent conflict of interest in TSSR's statements and opinions a such statements and opinions can not be considered independent. Information contained herein contains "forward looking statements" within the meaning of Section 27A of the Securities of 1933 and Section 21E of the Securities and Exchange Act of 1934. Any statements that express or involve discussions with respect to predictions, expectations, beliefs, plans, projectio objectives, goals, assumptions or future events or performance are not statements of historical facts and may be "forward looking statements". Forward looking statements are based expectations, estimates and projections at the time the statements are made that involve a number of risks and uncertainties which could cause actual results or events to differ materially fr those presently anticipated. Forward looking statements may be identified through the use of words such as "expects", "will", "anticipates", "estimates", "believes", or by statements indicati certain actions "may", "could", "should" or "might" occur. TSSR has been compensated twenty five thousand dollars for coverage of GHL Technologies, Inc., by MG Marketing Enterpris who paid one million and seventy thousand dollars to distribute this mailer. TSSR encourages its readers to invest carefully and read the investor information available at the web sites of t Securities and Exchange Commission (SEC) including the SEC's EDGAR page and/or the National Association of Securities Dealers (NASD). © The Street Stock Report

## GHL Technologies, Inc.    Ticker: GHLT

If you're tired of stocks that go nowhere (and who isn't!) it's time to discover my 'secret stock' that is about to take off fast – **even in this flat market!**

# Don't wait to take action!

Once the smart money discovers **GHLT**, this stock could start to move up quickly and never see these low prices again!



## A WORLD OF OPPORTUNITY
### now exists in the emerging GPS market.

**INVESTING NOW in GHLT is crucial to gaining the highest returns from this stock!**

Visit www.TheStreetStockReport.com to view an impressive VIDEO detailing the wide variety of GPS applications that exist and why the GPS market is projected to make such HUGE growth in the years ahead!

**COMPANY: GHL Technologies, Inc.**
**STOCK SYMBOL: GHLT**
**RECOMMENDATION: STRONG BUY**

THE STREET STOCK REPORT

# EXHIBIT 38

**From:** Frank Abel [frank@abellanhnos.es]

**Sent:** Thursday, December 22, 2005 9:12 AM

**To:** kalauokalani Gene Hew-Len

**Subject:** Investor Relations

**Importance:** High

**Attachments:** Rodgriguez Blo.doc

Gene,

attached Bio of a candidate for doing GHL investor relations.
this contact comes from Paula Argento.
when you get it, please contact me and we discuss next steps.
we need to arrive to an agreement with him as soon as possible.

Frank


EXHIBIT
SF 03144

**Jesús L. Rodríguez, MBA**

6201 SW 8th Street
Plantation, Florida 33317
Home: 954-584-9636 / Mobile: 305-776-4535
Email: jesuslrodriguez@yahoo.com

**SUMMARY**

Investor relations and public relations generalist with ten years experience specializes in writing, media relations, and public relations for companies trading on the Pink Sheets and OTC markets

**EDUCATION**

**Master of Business Administration**
**Specialization in International Business**
**Barry University – Miami Shores, Florida**
*Beta Gamma Sigma, National Academic Honor Society*

**Bachelor of Science in Communications**
**Public Relations Major, Marketing Minor**
**Florida International University – Miami, Florida**
*First Annual Fleishman-Hillard Multicultural Scholarship Recipient*
*Omicron Delta Kappa, National Leadership Honor Society*

**PROFESSIONAL HIGHLIGHTS**

- As sole practitioner, developed and implemented international public relations/marketing programs for such clients as Bacardi USA, Cordis Corporation and Pacer Health Corporation, as well as investor relations programs for a number of publicly traded companies, including Airbee Wireless, Natural Harmony Foods, Diamond Bay Holdings, Global Vision Holdings, and Viyya Technologies
- Have worked for three of the top six public relations firms in the world, including account management positions at two of these as a team leader in the following practice areas: consumer, B2B, travel & tourism, U.S.-Hispanic, and Latin America
- Managed and implemented day-to-day local, national and international communications initiatives for such clients as Busch Entertainment Corporation, the Cancun Convention & Visitors Bureau, Citrix Systems, Gems International Television, Holland & Knight LLP, The Home Depot, LatPro.com, M&M/Mars, and the Tourism Board of the Dominican Republic
- Managed launch campaigns for four technology companies focusing on Latin American markets
- Managed account teams in the implementation of domestic diversity initiatives for such notable companies as Acuvue, Baskin-Robbins, Clarinex, Georgia-Pacific, KFC, and Medtronic
- Have contributed articles to the *Associated Press*, *The Miami Herald* and other media; have been interviewed for feature placements in such outlets as *CNN en Español*, *Univision Radio* and *Mun2*

**CAREER TRACK**

| | |
|---|---|
| PAGE ONE COMMUNICATIONS GROUP | PRESIDENT, NOVEMBER 2003 - PRESENT |
| EDELMAN PUBLIC RELATIONS WORLDWIDE | ACCOUNT SUPERVISOR, NOVEMBER 2001 - NOVEMBER 2003 |
| WEBER SHANDWICK WORLDWIDE | ACCOUNT SUPERVISOR, MARCH 2000 - NOVEMBER 2001 |
| JDP & ASSOCIATES, INC. | VICE PRESIDENT, MAY 1998 - MARCH 2000 |
| LINDA DEMARTINO PUBLIC RELATIONS | ASST. ACCOUNT EXECUTIVE, JULY 1996 - MAY 1998 |
| FLEISHMAN-HILLARD INTERNATIONAL | INTERN/ACCOUNT COORDINATOR, AUGUST 1995 - JULY 1996 |

**PROFESSIONAL HONORS**

- Winner of 2003 Silver Anvil Award of Excellence (marketing consumer services – technology category) for the national consumer launch of cellular provider MetroPCS
- Winner of 2002 *PR News* Platinum PR Award for the year's best multicultural public relations campaign, the launch of M&M/Mars' *Dulce de Leche-Caramel* Chocolate Candies; named one of five finalists for a 2002 Gold SABRE Award (multicultural marketing category) for same

**COMMUNITY AFFILIATIONS**

- *The National Society of Hispanic MBAs (NSHMBA)*: Active member and newly elected chair of community and corporate relations committee for the organization's South Florida chapter
- *Little Brothers - Friends of the Elderly*: Active volunteer and serve on the non-profit organization's South Florida advisory board; currently serving as chairperson of the board

**SKILLS/PERSONAL**

Proficient writer; strong presentation and interpersonal skills; willingness to travel; entrepreneurial; work well under pressure; highly computer literate

**Fluent in English and Spanish**                    **References Available Upon Request**

# EXHIBIT 39

**From:** Jesus Rodriguez (jesuslrodriguez@yahoo.com)
**To:** Gene Hew-Len; 'paula argento'
**Date:** Tuesday, April 4, 2006 5:56:48 AM
**Subject:** 2005 Results Release

Hi Gene:
Per your instruction, I have updated the 2005 Results
release to once again include the percentages.  Also
per your instruction, the headline and lead text are
all very dry as this release is intended to report
factually what is contained in the 2005 filing.

Per our conversation, I deferred to Paula as to
whether the percentages should be added and encouraged
you to please discuss with her to make sure this
release is within SEC guidelines.

Also attached is a preliminary press release schedule
including the now seven items in the pipeline (I await
your info to draft the news release on guidance for
06).

Looking forward to your thoughts on each of the
attached.
Jesus

---

Do You Yahoo!?
Tired of spam?  Yahoo! Mail has the best spam protection around
http://mail.yahoo.com



EXHIBIT

PA0385 Confidential
FOIA Exemption Claimed

**DRAFT 3**
**For Immediate Release**

Investor & Media Contact:
Jesus Rodriguez
305.776.4535

# GHL Technologies Reports Revenue and Net Income Increases in 2005

BREMERTON, WASHINGTON – April XXX, 2006 – According to financial statements filed yesterday, **GHL Technologies, Inc. (Pink Sheets: GHLT)**, a leading GPS/telematics installation company, has reported total revenue of $606,253.31 and net income of $37,060.77 for the year ended December 31, 2005. This is compared to total revenue of $85,488.50 and net income of $2,868.55 for the same period ended December 31, 2004.

This represents a total revenue increase of 1,192 percent and a net income increase of 609 percent for the year ended December 31, 2005 over the same period ended December 31, 2004. Expressed as a percentage of total revenue, net income rose from approximately 7.74 percent in 2004 to approximately 14.10 percent in 2005.

GHL Technologies projects continued revenue growth from its wholly owned subsidiary, Emergency Vehicle Installation, Inc. ("EVI"); plans to add more installers; and intends to acquire other GPS-related companies over the coming months. EVI is currently under a partnership agreement with Trimble Navigation, Ltd. (NASDAQ: TRMB) to provide nationwide sales, installation and maintenance for Trimble's full line of GPS/telematics products and projects more than $10 million in revenue over the next three years from the sale and installation of Trimble products alone.

"Management is delighted to announce such positive results for our fiscal year 2005. We believe these results, as well as our projected sales growth in 2006, will enhance shareholder value and speak to the strength of our management team as well as the viability of our business model," said Gene Hew-Len, CEO of GHL Technologies and a 25-year veteran of the mobile electronics and GPS/telematics industry.

"GHL is capitalizing on a profound trend among large GPS and telematics OEMs to outsource their installation and maintenance functions. We are poised for leadership in the GPS/telematics installation space," added Hew-Len.

According to numerous industry sources, global GPS and telematics sales are expected to exceed $16 billion by the end of this year, with the demand for real-time track and trace applications growing exponentially as companies continue to improve customer service standards. The GPS/telematics marketplace is expected to grow at a rate of nearly 25 percent through 2007 and more rapidly beginning in 2008 as the next wave of GPS/telematics technology is made available via new satellite launches.

GHL Technologies continues to aggressively engage its resources to identify and establish strategic partnerships with companies on the cutting edge of GPS/telematics technological development as well as complete acquisitions that are consistent with its business model.

**About GHL Technologies**

PA0386 Confidential
FOIA Exemption Claimed

GHL Technologies seeks to become a leading, international GPS/telematics installation company by aggressively investing in new acquisitions, building strategic alliances, and securing partnerships with companies on the cutting edge of GPS and telematics development – thereby creating value for its shareholders.

(more)

Page 2 of 2

For more information, please visit www.ghltechnologies.com.   GHLT shareholders are encouraged to register on the site's "Shareholder Registration" page to receive ongoing company news updates.

### ###

Legal Notice Regarding Forward-Looking Statements: "Forward-looking statements" as defined in the Private Securities Litigation Reform Act of 1995 may be included in this news release. These statements relate to future events or our future financial performance. These statements are only predictions and may differ materially from actual future results or events. GHL Technologies disclaims any intention or obligation to revise any forward-looking statements whether as a result of new information, future developments or otherwise. Important risk factors could cause actual results to differ from those contained in forward-looking statements; these include, but are not limited to, risks associated with changes in general economic and business conditions, actions of our competitors, the extent to which we are able to develop new services and markets for our services, the time and expense involved in such development activities, the level of demand and market acceptance of our services, and changes in our business strategies.

SOURCE: GHL Technologies, Inc. (Pink Sheets: GHLT)

PA0387 Confidential
FOIA Exemption Claimed

**PageOne Communications Group**
**GHL Technologies**
**Proposed 45-Day Press Release Program**
**Updated April 3, 2006**

Pre-Launch

| Item | Deadline | Release Date | Status | Who |
|---|---|---|---|---|
| Set up BusinessWire sub-account for GHL | 02/29/06 | | DONE | JLR |
| Draft/Secure final approval on first press release to announce new ticker symbol and public status | 04/03/06 | | DONE | JLR |
| Finalize GHLTechnologies.com website text/format | 04/03/06 | | DONE | JLR |
| Finalize EVIGPS.com website text/format | 04/03/06 | | DONE | JLR |
| Draft additional news items per proposed press release schedule | 04/03/06 | | Final Approvals Pending | JLR |

Week of April 10, 2006

| Item | Deadline | Release Date | Status | Who |
|---|---|---|---|---|
| Press Release: Announce new ticker symbol, public status, EVI Acquisition | | 04/10/06 | Approval Pending | JLR |
| Draft/Secure final approval on next news release | 04/11/06 | | In process | JLR |
| Press Release: Announce Guidance for 2006 | | 04/12/06 | Pending | JLR |

Week of April 17, 2006

| Item | Deadline | Release Date | Status | Who |
|---|---|---|---|---|
| Press Release: Announce 2005 Financial Results per Recently Filed Report | | 04/18/06 | Pending | JLR |
| Secure final approval on next news release | 04/21/06 | | In process | JLR |

Week of April 24, 2006

| Item | Deadline | Release Date | Status | Who |
|---|---|---|---|---|
| Press Release: Announce signed contract with Trimble to provide sales and installation services for Trimble nationwide | | 04/24/06 | Pending | JLR |
| Secure final approval on next news release | 04/28/06 | | In process | JLR |

Week of May 1, 2006

| Item | Deadline | Release Date | Status | Who |
|---|---|---|---|---|
| Press Release: Announce the hire of Morris Hall as EVI President of Operations | | 05/01/06 | Pending | JLR |
| Secure final approval on next news release | 05/05/06 | | In process | JLR |

Week of May 8, 2006

| Item | Deadline | Release Date | Status | Who |
|---|---|---|---|---|
| Press Release: Announce signed service and maintenance contract with Titan | | 05/09/06 | Pending | JLR |
| Secure final approval on next news release | 05/12/06 | | In process | JLR |

Week of May 15, 2006

| Item | Deadline | Release Date | Status | Who |
|---|---|---|---|---|
| Press Release: Announce Close of Private Placement Round | | 05/16/06 | Pending | JLR |
| Draft/Secure final approval on next news release | 05/19/06 | | Pending | JLR |

PA0388 Confidential
FOIA Exemption Claimed

# EXHIBIT 40

*Vega Star*

Date: 05/22/2006 _____

Park Financial Group
174 West Comstock Ave
Winter Park, FL 32789

To Whom It May Concern:

Please accept this letter as notice to all concerned individuals. I, _Frank Abellan_
_(Power of Attorney_ (account number _____ ), have negotiated and come to an
arrangement with Park Financial Group in regards to selling a block of my current
position in _GHL Technologies Inc_____ , symbol _GHLT_ . The
shares negotiated do not have any restrictions, liens or holds. In no way did Park
Financial Group approach me with any offer to purchase. I have agreed this _22_ day of
_May_ , 2006 to sell to Park Financial Group a block of _1,000,00_ shares
at a price of _$ 1.54_ . Thank you for your attention to this matter. If you have any
questions regarding this transaction, please feel free to call me.

_Gordon Cantley_

Gordon Cantley
President
Park Financial Group

_[Client and Shareholder Signature]_
Client and Shareholder Signature

Frank Abellan (Power of Attorney)
Client and Shareholder Print Name

_[Registered Representative Signature]_
Registered Representative Signature

David Farber
Registered Representative Print Name

**REDACTED**

# EXHIBIT 41

*Klo Financial*

Date: 05/22/2006

Park Financial Group
174 West Comstock Ave
Winter Park, FL 32789

To Whom It May Concern:

Please accept this letter as notice to all concerned individuals. I, Frank Abellan
(Power of Attorney)(account number _____), have negotiated and come to an
arrangement with Park Financial Group in regards to selling a block of my current
position in GHL Technologies Inc _____, symbol ___GHLT___. The
shares negotiated do not have any restrictions, liens or holds. In no way did Park
Financial Group approach me with any offer to purchase. I have agreed this _22_ day of
___May___, 2006 to sell to Park Financial Group a block of _1,200,000_ shares
at a price of _$1.54_. Thank you for your attention to this matter. If you have any
questions regarding this transaction, please feel free to call me.

Gordon Cantley                                    Client and Shareholder Signature
President
Park Financial Group                              Frank Abellan (Power of Attorney)
                                                  Client and Shareholder Print Name

Registered Representative Signature

David Farber
Registered Representative Print Name

REDACTED

# EXHIBIT 42

• Wire Transfer • *ZP03*

**COMPLETED**

## Penson Account Information

| | |
|---|---|
| Account | |
| Account Name | EU EQUITY HOLDINGS INC |
| Account Type | 1 - Cash |
| Account Balance | No |
| Amount | $1000000.00 (USD) |

## Recipient Bank Information

| | |
|---|---|
| Foreign Wire | Yes |
| SWIFT Number | CRDAADAD |
| Country | ANDORRA |
| Bank Name | CREDIT ANDORRA |
| Bank City | ANDORRA LA VELLA |
| Bank State | |
| Other Information | |

## Beneficiary Information

| | |
|---|---|
| Bank Account Number | |
| Third Party | No |
| Beneficiary Name | EU EQUITY HOLDINGS INC ATTN CARLOS CORDERO PRESIDE |
| Beneficiary Address Line 1 | EAST 53RD ST |
| Beneficiary Address Line2 | MARBELLA SWISS BANK BLDG FL 2 |

## For Further Credit To

| | |
|---|---|
| Intermediate Account | No |

## Other Information

| | |
|---|---|
| Process Date | 04/28/2006 |
| Charge Non-Domestic Wire Fee To | Customer |

## Fee Summary

| | |
|---|---|
| Non-Domestic Wire Fee | 50.00 |
| Total Fees | 50.00 |

## Action

| | |
|---|---|
| Entered By | Amanda Monopoli |
| Entered Date | 4/28/2006 |
| Approved by | Amanda Monopoli |
| Approved Date | 4/28/2006 9:58:00 AM |
| Current Status | Approved |

Close

**REDACTED**

NASD CONFIDENTIAL

06/06/2006  14:51    4076721338          PARK FINANCIAL GROUP          PAGE  03/19



### Penson Financial Services, Inc

### FED WIRE REQUEST FORM

**Third-Party wires are not accepted.**

**Date:** 4/27/2006

**Penson Financial Account Number:**

**Penson Financial Account Name:** EU Equity Holdings Inc

**Amount of Transfer:** $1,000,000

**Recipient Bank Information:**

　**Bank ABA Number:** I.B.A.N. AD75 0003 0012 0000 009L 3283

　**Bank Name:** Credit Andorra

　**Bank City and State:** Andorra la Vella

　**SWIFT Number (Foreign Wires Only):** CRDAADAD

　**Country (Foreign Wires Only):** Principality of Andorra

**Beneficiary Information:**

　**Customer's Name:** EU Equity Holdings Inc

　**Customer's Bank Account Number:**

　**Customer's Physical Address:** East 53rd Street, Marbella, 2nd floor, Rep Panama

**For Further Credit To:**

　**Name:**

　**Account Number:**

　**Customer Signature:**

**Customer Signature (Joint Account):**

*Notary is required for International Wires only.
　**NOTARY SIGNATURE:**

　**NOTARY SEAL:**

**received**
04-28-06

**ENTERED**
10:58

**By signing or initialing below, I confirm that as authorized agent of the introducing firm
all recipients, beneficiaries and receiving banks have been checked against OFAC database."**

　**Office Approval:**

Revised : 7/2004

**REDACTED**

06/06/2006  14:51     4076721338              PARK FINANCIAL GROUP          PAGE   04/19

• Wire Transfer • *ZPB3*                                                        ?

## Penson Account Information

**Account**
**Account Name**              EU EQUITY HOLDINGS INC
**Account Type**              1 - Cash
**Account Balance**           No
**Amount**                    $750000.00 (USD)

## Recipient Bank Information

**Foreign Wire**              Yes
**SWIFT Number**              CRDAADAD
**Country**                   ANDORRA
**Bank Name**                 CREDIT ANDORRA
**Bank City**                 ANDORRA LA VELLA
**Bank State**
**Other Information**

## Beneficiary Information

**Bank Account Number**
**Third Party**               No
**Beneficiary Name**          EU EQUITY HOLDINGS INC ATTN CARLOS CORDERO PRESIDE
**Beneficiary Address Line 1** EAST 53RD ST
**Beneficiary Address Line2** MARBELLA SWISS BANK BLDG FL 2

## For Further Credit To

**Intermediate Account**      No

## Other Information

**Process Date**              05/19/2006
**Charge Non-Domestic Wire Fee To**  Customer

## Fee Summary

**Non-Domestic Wire Fee**     50.00
**Total Fees**                50.00

## Action

**Entered By**                Amanda Monopoli
**Entered Date**              5/19/2006
**Approved by**               Amanda Monopoli
**Approved Date**             5/19/2006 10:50:00 AM
**Current Status**            Approved

[ Close ]

REDACTED

NASD CONFIDENTIAL                                                           357

06/06/2006  14:51   4076721338        PARK FINANCIAL GROUP                    PAGE  05/19



**Penson Financial Services, Inc**

**FED WIRE REQUEST FORM**

Third-Party wires are not accepted.

Date:  5/18

Penson Financial Account Number:

Penson Financial Account Name:    EU Equity Holdings Inc

Amount of Transfer:               $750,000

Recipient Bank Information:

    Bank ABA Number:              I.B.A.N. AD75 0003 0012 0000 009L 3283

    Bank Name:                    Credit Andorra

    Bank City and State:          Andorra la Vella

    SWIFT Number (Foreign Wires Only):  CRDAADAD

    Country (Foreign Wires Only):  Principality of Andorra

Beneficiary Information:

    Customer's Name:              EU Equity Holdings Inc

    Customer's Bank Account Number:

    Customer's Physical Address:  East 53rd Street, Marbella, 2nd floor, Rep Panama

For Further Credit To:

    Name:

    Account Number:

Customer Signature:

Customer Signature (Joint Account):

*Notary is required for International Wires only.
    NOTARY SIGNATURE:

    NOTARY SEAL:

**received**
05-19-06

**ENTERED ALSO**

**By signing or initialing below, I confirm that as authorized agent of the introducing firm
all recipients, beneficiaries and receiving banks have been checked against OFAC database.**

    Office Approval:

Revised : 7/2004



• Wire Transfer • ZP 03



## Penson Account Information

**Account**
**Account Name**            EU EQUITY HOLDINGS INC
**Account Type**            1 - Cash
**Account Balance**         No
**Amount**                  $1500000.00 (USD)

## Recipient Bank Information

**Foreign Wire**            Yes
**SWIFT Number**            CRDAADAD
**Country**                 ANDORRA
**Bank Name**               CREDIT ANDORRA
**Bank City**               ANDORRA LA VELLA
**Bank State**
**Other Information**

## Beneficiary Information

**Bank Account Number**
**Third Party**             No
**Beneficiary Name**        EU EQUITY HOLDINGS INC ATTN CARLOS CORDERO PRESIDE
**Beneficiary Address Line 1**  EAST 53RD ST
**Beneficiary Address Line2**   MARBELLA SWISS BANK BLDG FL 2

## For Further Credit To

**Intermediate Account**    No

## Other Information

**Process Date**            05/24/2006
**Charge Non-Domestic Wire Fee To**  Customer

## Fee Summary

**Non-Domestic Wire Fee**   50.00
**Total Fees**              50.00

## Action

**Entered By**              Amanda Monopoli
**Entered Date**            5/24/2006
**Approved by**             Amanda Monopoli
**Approved Date**           5/24/2006 12:23:00 PM
**Current Status**          Approved

Close

REDACTED

06/05/2006  14:51   4076721338          PARK FINANCIAL GROUP                    PAGE  07/19



**PENSON**

### Penson Financial Services, Inc

### FED WIRE REQUEST FORM

Third-Party wires are not accepted.

Date: **5/24/2006**

Penson Financial Account Number:

Penson Financial Account Name:         **EU Equity Holdings Inc**

Amount of Transfer:                    **$1,500,000**

Recipient Bank Information:

    Bank ABA Number:              **I.B.A.N. AD75 0003 0012 0000 009L 3283**

    Bank Name:                    Credit Andorra

    Bank City and State:          Andorra la Vella

    SWIFT Number (Foreign Wires Only):  CRDAADAD

    Country (Foreign Wires Only):  Principality of Andorra

Beneficiary Information:

    Customer's Name:              **EU Equity Holdings Inc**

    Customer's Bank Account Number:

    Customer's Physical Address:  East 53rd Street, Marbella, 2nd floor, Rep Panama

For Further Credit To:

    Name:

    Account Number:

Customer Signature:

Customer Signature (Joint Account):

*Notary is required for International Wires only.
NOTARY SIGNATURE:

NOTARY SEAL:

**received**
05/24/06

**ENTERED**
12:23

**By signing or initialing below, I confirm that as authorized agent of the introducing firm
all recipients, beneficiaries and receiving banks have been checked against OFAC database.**

Office Approval:

Revised : 7/2004

**REDACTED**

NASD CONFIDENTIAL

360

● **Wire Transfer** ● ZP63

**COMPLETED**

## Penson Account Information

| | |
|---|---|
| Account | |
| Account Name | EU EQUITY HOLDINGS INC |
| Account Type | 1 - Cash |
| Account Balance | No |
| Amount | $1600000.00 (USD) |

## Recipient Bank Information

| | |
|---|---|
| Foreign Wire | Yes |
| SWIFT Number | CRDAADAD |
| Country | ANDORRA |
| Bank Name | CREDIT ANDORRA |
| Bank City | ANDORRA LA VELLA |
| Bank State | |
| Other Information | |

## Beneficiary Information

| | |
|---|---|
| Bank Account Number | |
| Third Party | No |
| Beneficiary Name | EU EQUITY HOLDINGS INC ATTN CARLOS CORDERO PRESIDE |
| Beneficiary Address Line 1 | EAST 53RD ST |
| Beneficiary Address Line2 | MARBELLA SWISS BANK BLDG FL 2 |

## For Further Credit To

| | |
|---|---|
| Intermediate Account | No |

## Other Information

| | |
|---|---|
| Process Date | 05/25/2006 |
| Charge Non-Domestic Wire Fee To | Customer |

## Fee Summary

| | |
|---|---|
| Non-Domestic Wire Fee | 50.00 |
| Total Fees | 50.00 |

## Action

| | |
|---|---|
| Entered By | Amanda Monopoli |
| Entered Date | 5/25/2006 |
| Approved by | Amanda Monopoli |
| Approved Date | 5/25/2006 12:15:00 PM |
| Current Status | Approved |

[ Close ]

REDACTED



### Penson Financial Services, Inc

#### FED WIRE REQUEST FORM

Third-Party wires are not accepted.

Date: __5/25_____

Penson Financial Account Number: _____

Penson Financial Account Name: __EU Equity Holdings Inc_____

Amount of Transfer: __$1,600,000_____

Recipient Bank Information:

  Bank ABA Number: __I.B.A.N. AD75 0003 0012 0000 009L 3283__

  Bank Name: __Credit Andorra_____

  Bank City and State: __Andorra la Vella_____

  SWIFT Number (Foreign Wires Only): __CRDAADAD_____

  Country (Foreign Wires Only): __Principality of Andorra_____

Beneficiary Information:

  Customer's Name: __EU Equity Holdings Inc_____

  Customer's Bank Account Number: _____

  Customer's Physical Address: __East 53rd Street, Marbella, 2nd floor, Rep Panama__

For Further Credit To:

  Name: _____

  Account Number: _____

Customer Signature: _____

Customer Signature (Joint Account): _____

*Notary is required for International Wires only.

  NOTARY SIGNATURE: _____

  NOTARY SEAL:

**received**
05-25-00

**ENTERED**
12:15

**By signing or initialing below, I confirm that as authorized agent of the introducing firm all recipients, beneficiaries and receiving banks have been checked against OFAC database.**

  Office Approval: _____

Revised : 7/2004

REDACTED

NASD CONFIDENTIAL

## • Wire Transfer • ZP03

**COMPLETED**

### Penson Account Information
| | |
|---|---|
| **Account** | |
| **Account Name** | EU EQUITY HOLDINGS INC |
| **Account Type** | 1 - Cash |
| **Account Balance** | No |
| **Amount** | $1738431.00 (USD) |

### Recipient Bank Information
| | |
|---|---|
| **Foreign Wire** | Yes |
| **SWIFT Number** | CRDAADAD |
| **Country** | ANDORRA |
| **Bank Name** | CREDIT ANDORRA |
| **Bank City** | ANDORRA LA VELLA |
| **Bank State** | |
| **Other Information** | |

### Beneficiary Information
| | |
|---|---|
| **Bank Account Number** | |
| **Third Party** | No |
| **Beneficiary Name** | EU EQUITY HOLDINGS INC ATTN CARLOS CORDERO PRESIDE |
| **Beneficiary Address Line 1** | EAST 53RD ST |
| **Beneficiary Address Line2** | MARBELLA SWISS BANK BLDG FL 2 |

### For Further Credit To
| | |
|---|---|
| **Intermediate Account** | No |

### Other Information
| | |
|---|---|
| **Process Date** | 05/26/2006 |
| **Charge Non-Domestic Wire Fee To** | Customer |

### Fee Summary
| | |
|---|---|
| **Non-Domestic Wire Fee** | 50.00 |
| **Total Fees** | 50.00 |

### Action
| | |
|---|---|
| **Entered By** | Amanda Monopoli |
| **Entered Date** | 5/26/2006 |
| **Approved by** | Amanda Monopoli |
| **Approved Date** | 5/26/2006 12:25:00 PM |
| **Current Status** | Approved |

Close



**REDACTED**

**Penson Financial Services, Inc**

**FED WIRE REQUEST FORM**

Third-Party wires are not accepted.

Date:  5/26

Penson Financial Account Number:

Penson Financial Account Name:    EU Equity Holdings Inc

Amount of Transfer:    ALL BALANCE (except $10,000) $1,738,431

Recipient Bank Information:

   Bank ABA Number:    I.B.A.N. AD75 0003 0012 0000 009L 3283

   Bank Name:    Credit Andorra

   Bank City and State:    Andorra la Vella

   SWIFT Number (Foreign Wires Only):    CRDAADAD

   Country (Foreign Wires Only):    Principality of Andorra

Beneficiary Information:

   Customer's Name:    EU Equity Holdings Inc

   Customer's Bank Account Number:

   Customer's Physical Address:    East 53rd Street, Marbella, 2nd floor, Rep Panama

For Further Credit To:

   Name:

   Account Number:

Customer Signature:

Customer Signature (Joint Account):

*Notary is required for International wires only.

   NOTARY SIGNATURE:

   NOTARY SEAL:

**received**

05-210-06

**ENTERED**

**By signing or initialing below, I confirm that as authorized agent of the Introducing firm all recipients, beneficiaries and receiving banks have been checked against OFAC database.*

Office Approval:

Revised : 7/2004

**REDACTED**

• Wire Transfer • ZP∅3

## Penson Account Information

**COMPLETED**

**Account**
**Account Name**          KLO FINANCIAL SERVICES INC
**Account Type**          1 - Cash
**Account Balance**       No
**Amount**                $1500000.00 (USD)

## Recipient Bank Information

**Foreign Wire**          Yes
**SWIFT Number**          CRDAADAD
**Country**               ANDORRA
**Bank Name**             CREDIT ANDORRA
**Bank City**             ANDORRA LA VELLA
**Bank State**
**Other Information**

## Beneficiary Information

**Bank Account Number**
**Third Party**           No
**Beneficiary Name**      KLO FINANCIAL SERVICES INC ATTN CARLOS CORDERO PRE
**Beneficiary Address Line 1**   EAST 53RD ST
**Beneficiary Address Line2**    MARBELLA SWISS BANK BLDG FL 2

## For Further Credit To

**Intermediate Account**  No

## Other Information

**Process Date**          05/24/2006
**Charge Non-Domestic Wire Fee To**   Customer

## Fee Summary

**Non-Domestic Wire Fee**     50.00
**Total Fees**                50.00

## Action

**Entered By**            Amanda Monopoli
**Entered Date**          5/24/2006
**Approved by**           Amanda Monopoli
**Approved Date**         5/24/2006 12:21:00 PM
**Current Status**        Approved

[ Close ]

**REDACTED**

06/06/2006  14:51    4076721338          PARK FINANCIAL GROUP               PAGE  13/19



**PENSON**

### Penson Financial Services, Inc

### FED WIRE REQUEST FORM

Third-party wires are not accepted.

Date: __5/24/2006__

Penson Financial Account Number:

Penson Financial Account Name:        KLO Financial Services Inc

Amount of Transfer:                   $1,500,000

Recipient Bank Information:

   Bank ABA Number:                  AD53 0003 0012 0000 009L 3291

   Bank Name:                        Credit Andorra

   Bank City and State:              Andorra la Vella

   SWIFT Number (Foreign Wires Only):  CRDAADAD

   Country (Foreign Wires Only):     Principality of Andorra

Beneficiary Information:

   Customer's Name:                  KLO Financial Services Inc

   Customer's Bank Account Number:

   Customer's Physical Address:      East 53rd Street, Marbella, 2nd floor, Rep Panama

For Further Credit To:

   Name:

   Account Number:

Customer Signature:

Customer Signature (Joint Account):

*Notary is required for International Wires only.

   NOTARY SIGNATURE:

   NOTARY SEAL:

**received** 05-24-06

**ENTERED** 12:21

**By signing or initialing below, I confirm that as authorized agent of the introducing firm all recipients, beneficiaries and receiving banks have been checked against OFAC database.

   Office Approval:

**REDACTED**

Revised : 7/2004

NASD CONFIDENTIAL                                366

05/06/2006  14:51    4076721338          PARK FINANCIAL GROUP          PAGE  14/19

• **Wire Transfer** • ZPØ3

## Penson Account Information

| | |
|---|---|
| Account | |
| Account Name | KLO FINANCIAL SERVICES INC |
| Account Type | 1 - Cash |
| Account Balance | No |
| Amount | $1600000.00 (USD) |

**COMPLETED**

## Recipient Bank Information

| | |
|---|---|
| Foreign Wire | Yes |
| SWIFT Number | CRDAADAD |
| Country | ANDORRA |
| Bank Name | CREDIT ANDORRA |
| Bank City | ANDORRA LA VELLA |
| Bank State | |
| Other Information | |

## Beneficiary Information

| | |
|---|---|
| Bank Account Number | |
| Third Party | No |
| Beneficiary Name | KLO FINANCIAL SERVICES INC ATTN CARLOS CORDERO PRE |
| Beneficiary Address Line 1 | EAST 53RD ST |
| Beneficiary Address Line2 | MARBELLA SWISS BANK BLDG FL 2 |

## For Further Credit To

| | |
|---|---|
| Intermediate Account | No |

## Other Information

| | |
|---|---|
| Process Date | 05/25/2006 |
| Charge Non-Domestic Wire Fee To | Customer |

## Fee Summary

| | |
|---|---|
| Non-Domestic Wire Fee | 50.00 |
| Total Fees | 50.00 |

## Action

| | |
|---|---|
| Entered By | Amanda Monopoll |
| Entered Date | 5/25/2006 |
| Approved by | Amanda Monopoll |
| Approved Date | 5/25/2006 12:12:00 PM |
| Current Status | Approved |

[ Close ]

**REDACTED**



**PENSON**

## Penson Financial Services, Inc

### FED WIRE REQUEST FORM

Third-Party wires are not accepted.

Date: 5/25

| | |
|---|---|
| Penson Financial Account Number: | |
| Penson Financial Account Name: | KLO Financial Services Inc |
| Amount of Transfer: | $1,600,000 |
| Recipient Bank Information: | |
| Bank ABA Number: | AD53 0003 0012 0000 009L 3291 |
| Bank Name: | Credit Andorra |
| Bank City and State: | Andorra la Vella |
| SWIFT Number (Foreign Wires Only): | CRDAADAD |
| Country (Foreign Wires Only): | Principality of Andorra |
| Beneficiary Information: | |
| Customer's Name: | KLO Financial Services Inc |
| Customer's Bank Account Number: | |
| Customer's Physical Address: | East 53rd Street, Marbella, 2nd floor, Rep Panama |
| For Further Credit To: | |
| Name: | |
| Account Number: | |
| Customer Signature: | |
| Customer Signature (Joint Account): | |

*Notary is required for International Wires only.

NOTARY SIGNATURE:

NOTARY SEAL:

**received**
05-25-06

**ENTERED**
6/2/12

"**By signing or initialing below, I confirm that as authorized agent of the introducing firm
all recipients, beneficiaries and receiving banks have been checked against OFAC database."

Office Approval:

Revised : 7/2004

REDACTED

06/06/2006  14:51    4076721338          PARK FINANCIAL GROUP                    PAGE  16/19

• **Wire Transfer** • ZP∅3



**Penson Account Information**

| | |
|---|---|
| Account | |
| Account Name | KLO FINANCIAL SERVICES INC |
| Account Type | 1 - Cash |
| Account Balance | No |
| Amount | $1611731.48 (USD) |

**Recipient Bank Information**

| | |
|---|---|
| Foreign Wire | Yes |
| SWIFT Number | CRDAADAD |
| Country | ANDORRA |
| Bank Name | CREDIT ANDORRA |
| Bank City | ANDORRA LA VELLA |
| Bank State | |
| Other Information | |

**Beneficiary Information**

| | |
|---|---|
| Bank Account Number | |
| Third Party | No |
| Beneficiary Name | KLO FINANCIAL SERVICES INC ATTN CARLOS CORDERO PRE |
| Beneficiary Address Line 1 | EAST 53RD ST |
| Beneficiary Address Line2 | MARBELLA SWISS BANK BLDG FL 2 |

**For Further Credit To**

| | |
|---|---|
| Intermediate Account | No |

**Other Information**

| | |
|---|---|
| Process Date | 05/26/2006 |
| Charge Non-Domestic Wire Fee To | Customer |

**Fee Summary**

| | |
|---|---|
| Non-Domestic Wire Fee | 50.00 |
| Total Fees | 50.00 |

**Action**

| | |
|---|---|
| Entered By | Bishal Ghale |
| Entered Date | 5/26/2006 |
| Approved by | Amanda Monopoli |
| Approved Date | 5/26/2006 12:27:00 PM |
| Current Status | Approved |

Close





**PENSON**

### Penson Financial Services, Inc

### FED WIRE REQUEST FORM

**Third-Party wires are not accepted.**

Date:  __5/26__

Penson Financial Account Number:  _____

Penson Financial Account Name:  __KLO Financial Services Inc__

Amount of Transfer:  __ALL BALANCE (except $10,000)__ $1,001,384.00

Recipient Bank Information:

Bank ABA Number:  __AD53 0003 0012 0000 009L 3291__

Bank Name:  __Credit Andorra__

Bank City and State:  __Andorra la Vella__

SWIFT Number (Foreign Wires Only):  __CRDAADAD__

Country (Foreign Wires Only):  __Principality of Andorra__

Beneficiary Information:

Customer's Name:  __KLO Financial Services Inc__

Customer's Bank Account Number:  _____

Customer's Physical Address:  __East 53rd Street, Marbella, 2nd floor, Rep Panama__

For Further Credit To:

Name:  _____

Account Number:  _____

Customer Signature:  _____

Customer Signature (Joint Account):  _____

*Notary is required for International Wires only.

NOTARY SIGNATURE:  _____

**received**
05-26-06

NOTARY SEAL:

**By signing or initialing below, I confirm that as authorized agent of the introducing firm all recipients, beneficiaries and receiving banks have been checked against OFAC database.**

**ENTERED**
12:27

Office Approval:  _____

**REDACTED**

Revised : 7/2004

NASD  CONFIDENTIAL                                                    370

• Wire Transfer •

## Penson Account Information
**Account**
**Account Name**              KLO FINANCIAL SERVICES INC
**Account Type**              1 - Cash
**Account Balance**           No
**Amount**                    $750000.00 (USD)

**COMPLETED**

## Recipient Bank Information
**Foreign Wire**              Yes
**SWIFT Number**              CRDAADAD
**Country**                   ANDORRA
**Bank Name**                 CREDIT ANDORRA
**Bank City**                 ANDORRA LA VELLA
**Bank State**
**Other Information**

## Beneficiary Information
**Bank Account Number**
**Third Party**               No
**Beneficiary Name**          KLO FINANCIAL SERVICES INC ATTN CARLOS CORDERO PRE
**Beneficiary Address Line 1** EAST 53RD ST
**Beneficiary Address Line2** MARBELLA SWISS BANK BLDG FL 2

## For Further Credit To
**Intermediate Account**      No

## Other Information
**Process Date**              05/19/2006
**Charge Non-Domestic Wire Fee To**  Customer

## Fee Summary
**Non-Domestic Wire Fee**     50.00
**Total Fees**                50.00

## Action
**Entered By**                Amanda Monopoli
**Entered Date**              5/19/2006
**Approved by**               Amanda Monopoli
**Approved Date**             5/19/2006 10:49:00 AM
**Current Status**            Approved

[ Close ]

REDACTED

NASD CONFIDENTIAL



**PENSON**

### Penson Financial Services, Inc

### FED WIRE REQUEST FORM

Third-Party wires are not accepted.

Date:  5/18

Penson Financial Account Number:

Penson Financial Account Name:        KLO Financial Services Inc

Amount of Transfer:                   $750,000

Recipient Bank Information:

    Bank ABA Number:                  AD53 0003 0012 0000 009L 3291

    Bank Name:                        Credit Andorra

    Bank City and State:              Andorra la Vella

    SWIFT Number (Foreign Wires Only):  CRDAADAD

    Country (Foreign Wires Only):     Principality of Andorra

Beneficiary Information:

    Customer's Name:                  KLO Financial Services Inc

    Customer's Bank Account Number:

    Customer's Physical Address:      East 53rd Street, Marbella, 2nd floor, Rep Panama

For Further Credit To:

    Name:

    Account Number:

Customer Signature:

Customer Signature (Joint Account):

*Notary is required for International Wires only.

    NOTARY SIGNATURE:

    NOTARY SEAL:

**received**
05-19-06

ENTERED

**By signing or initialing below, I confirm that as authorized agent of the introducing firm all recipients, beneficiaries and receiving banks have been checked against OFAC database.**

Office Approval:

Revised : 7/2004



REDACTED

NASD CONFIDENTIAL                                                    372

# EXHIBIT 43

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

NXGEN HOLDINGS, INC., et al.,

Defendants.

C.A. No. __-____

## CONSENT OF DEFENDANT FRANCISCO ABELLAN

1.     Defendant Francisco Abellan ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.     Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

> (a)     permanently restrains and enjoins Defendant from violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5] and Section 5 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77e];

      (b)    orders Defendant to pay disgorgement in the amount of $1,539,438.97, plus prejudgment interest thereon in the amount of $145,188.30; and

      (c)    orders Defendant to pay a civil penalty in the amount of $100,000 pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

3.      Defendant acknowledges that the civil penalty paid pursuant to the Final Judgment may be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Regardless of whether any such Fair Fund distribution is made, the civil penalty shall be treated as a penalty paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant agrees that he shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant agrees that he shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this action. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

4.    Defendant agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendant further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

5.    Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

6.    Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

7.    Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.    Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

9.    Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

11.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

12.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction

while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14.     Defendant agrees that the Affidavit of Francisco Abellan, attached as an exhibit hereto, is incorporated herein with same force and effect as if fully set forth herein.

15.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

16.     Defendant agrees that this Court shall retain jurisdiction over this matter for the

purpose of enforcing the terms of the Final Judgment.

Dated: July 21ᵈ, 2008

_____

Francisco Abellan

Approved as to form:

Craig D. Martin, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

NXGEN HOLDINGS, INC., et al.

Defendants.

C.A. No. __-____

## [PROPOSED] FINAL JUDGMENT AS TO DEFENDANT FRANCISCO ABELLAN

The Securities and Exchange Commission having filed a Complaint and Defendant

Francisco Abellan having entered a general appearance; consented to the Court's jurisdiction

over Defendant and the subject matter of this action; consented to entry of this Final Judgment

without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived

findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and

Defendant's agents, servants, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or

otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section

10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and

Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or

sf-2548972

instrumentality of interstate commerce, or of the mails, or of any facility of any national

securities exchange, in connection with the purchase or sale of any security:

     (a)     to employ any device, scheme, or artifice to defraud;

     (b)     to make any untrue statement of a material fact or to omit to state a material fact

          necessary in order to make the statements made, in the light of the circumstances

          under which they were made, not misleading; or

     (c)     to engage in any act, practice, or course of business which operates or would

          operate as a fraud or deceit upon any person.

II.

     IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant

and Defendant's agents, servants, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or

otherwise are permanently restrained and enjoined from violating Section 5 of the Securities Act

of 1933 (the "Securities Act") [15 U.S.C. § 77e] by, directly or indirectly, in the absence of any

applicable exemption:

     (a)     Unless a registration statement is in effect as to a security, making use of any

          means or instruments of transportation or communication in interstate commerce

          or of the mails to sell such security through the use or medium of any prospectus

          or otherwise;

     (b)     Unless a registration statement is in effect as to a security, carrying or causing to

          be carried through the mails or in interstate commerce, by any means or

          instruments of transportation, any such security for the purpose of sale or for

delivery after sale; or

(c)     Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

### III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $1,539,438.97, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $145,188.30, for a total of $1,684,627.27, and a civil penalty in the amount of $100,000.00 pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. Defendant shall satisfy this obligation by allowing the payment of $1,784,627.27 and accrued interest (the "Funds") to the Clerk of the Court pursuant to the instructions of a previously established escrow agreement. Defendant shall separately send to the Clerk of Court a cover letter identifying Francisco Abellan as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of such payment and letter to the Commission's counsel in this action. Upon disbursement of the Funds by the escrow agent to the Clerk of this Court,

sf-2548972                                          3

Defendant will relinquish all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Defendant. The Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System ("CRIS") or any other type of interest bearing account that is utilized by the Court. These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held in the interest bearing account until further order of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant shall, within 30 days after

entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

### IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

### V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

## VI.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

PRESENTED BY:

_____

Marc J. Fagel
Michael S. Dicke
Patrick T. Murphy
Jennifer L. Scafe

Dated: _____, _____

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT 44

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

NXGEN HOLDINGS, INC., et al.,

Defendants.

C.A. No. __-____

## CONSENT OF DEFENDANT VEGA STAR CAPITAL, SL

1.    Defendant Vega Star Capital, SL ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.    Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:  permanently restrains and enjoins Defendant from violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5] and Section 5 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77e].

3.    Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

sf-2548989                                               1

4.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

5.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

6.      Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

7.      Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

8.      Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

9.      Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges

that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

10.   Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

11.   Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to

seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

      12.    Defendant agrees that the Affidavit of Francisco Abellan, attached as an exhibit hereto, is incorporated herein with same force and effect as if fully set forth herein.

      13.    Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

      14.    Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: _Uly o22nd, 2008_

_____
Vega Star Capital, SL

By: Francisco Abellan – Director
Pl. Francesc Macia 7, 6A, 08029 Barcelona


Approved as to form:

_____
Craig D. Martin, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

sf-2548989

4

# EXHIBIT 45

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

NXGEN HOLDINGS, INC., et al.

Defendants.

---

C.A. No. __-____

## AFFIDAVIT OF FRANCISCO ABELLAN

FRANCISCO ABELLAN, being duly sworn, deposes and says:

1.  I make the statements herein based on my own personal knowledge.

2.  I have no ownership interest in EU Equity Holdings, Inc.

3.  I have no ownership interest in KLO Financial Services, Inc.

4.  I am not a principal of EU Holdings, Inc.

5.  I am not a principal of KLO Financial Services, Inc.

6.  I received no proceeds or other benefit directly or indirectly from any sale by EU Equity Holdings, Inc.'s of GHL Technologies, Inc. stock.

7.  I received no proceeds or other benefit directly or indirectly from any sale by KLO Financial Services, Inc.'s sale GHL Technologies, Inc. stock.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July _22nd_ , 2008, at Barcelona, Spain.

Francisco Abellan

In the Matter of GHL Technologies, Inc. (SF-3144)

### AFFIDAVIT OF FRANCISCO ABELLAN

FRANCISCO ABELLAN, being duly sworn, deposes and says:

1.      I make the statements herein based on my own personal knowledge.

2.      I have no ownership interest in EU Equity Holdings, Inc.

3.      I have no ownership interest in KLO Financial Services, Inc.

4.      I am not a principal of EU Holdings, Inc.

5.      I am not a principal of KLO Financial Services, Inc.

6.      I received no proceeds or other benefit from any sale by EU Equity Holdings,

Inc.'s of GHL Technologies, Inc. stock.

7.      I received no proceeds or other benefit from any sale by KLO Financial Services,

Inc.'s sale GHL Technologies, Inc. stock.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

May 28, 2008, at Barcelona, Spain.

_____
Francisco Abellan

# EXHIBIT 46



**Corporate Trust Services**
One California Street, Suite 2100
San Francisco, CA 94111
*www.usbank.com/corporatetrust*

June 19, 2008

To whom it may concern:

This letter will serve to confirm that on June 17, 2008, U.S. Bank National Association, in it's capacity as Escrow Agent received $1,789,603.00 USD from Mr. Francisco Abellan for deposit into an Escrow Account opened by Mr. Abellan.

Enclosed for your records is a copy of the Escrow Agreement.

Should you have any questions or concerns, my contact information is included in the Notice section of the Escrow Agreement

Sincerely,

Sheila K. Soares
Vice President

## ESCROW AGREEMENT

This Escrow Agreement dated this 11th day of June, 2008 (the "Escrow Agreement"), is entered into by and among Francisco Abellan, a Spanish citizen ("Depositor") and U.S Bank National Association, as escrow agent ("Escrow Agent").

## RECITALS

Whereas the Depositor wishes to establish an escrow account with Escrow Agent to provide for payment of amounts offered in settlement of an anticipated civil action in which the Depositor and the United States Securities & Exchange Commission ("SEC") will be parties, the Depositor and the Escrow Agent agree as follows:

## ARTICLE 1
## ESCROW DEPOSIT

Section 1.1.   Receipt of Escrow Property.   Upon execution hereof, the Depositor shall deliver to the Escrow Agent the amount of $1,784,627.27 (the "Escrow Property") in immediately available funds.

Section 1.2.   Investments.   The Escrow Agent is authorized and directed to deposit, transfer, hold and invest the Escrow Property and any investment income thereon in a U.S. Bank Money Market Account, which is FDIC insured, as fully described on the attached Exhibit A hereto, or as set forth in any subsequent written instruction signed by the Depositor or his counsel.   Any investment earnings and income on the Escrow Property shall become part of the Escrow Property, and shall be disbursed in accordance with Section 1.3 or Section 1.5 of this Escrow Agreement. The Escrow Agent shall have no liability for any investment losses, including without limitation any market loss on any investment liquidated prior to maturity in order to make a payment required hereunder.

Section 1.3.   Disbursements.   The funds in the escrow account shall be distributed according to the following instructions:

(a)  Escrow Agent shall distribute the funds in the escrow account according to the terms of a final, non-appealable court order, entered by consent in proceedings to which the Depositor and the SEC are parties.  The SEC or the Depositor will serve a copy of the order upon Escrow Agent; or,

(b)  Escrow Agent shall release all funds in the escrow account to the Depositor upon receipt of a written notice, prepared on SEC letterhead and signed by the Director of the SEC's Division of Enforcement, and served upon the Escrow Agent by the SEC.

Section 1.4.   Income Tax Allocation and Reporting.

(a)  It is agreed that, for tax reporting purposes, all interest and other income from investment of the Escrow Property shall, as of the end of each calendar year and to

S-1

sf-2529311

the extent required by the Internal Revenue Service, be reported as having been earned by the Depositor, whether or not such income was disbursed during a such calendar year.

(b)    Prior to closing, the Depositor shall provide the Escrow Agent with certified tax identification numbers by furnishing appropriate forms W-9 or W-8 and such other forms and documents that the Escrow Agent may request.    The Depositor understands that if such tax reporting documentation is not provided and certified to the Escrow Agent, the Escrow Agent may be required by the Internal Revenue Code of 1986, as amended, and the Regulations promulgated thereunder, to withhold a portion of any interest or other income earned on the investment of the Escrow Property.

Section 1.5.    Termination.    Upon the disbursement of all of the Escrow Property, including any interest and investment earnings thereon, this Escrow Agreement shall terminate and be of no further force and effect except that the provisions of Sections 1.4(c), 3.1 and 3.2 hereof shall survive termination.

## ARTICLE 2
## DUTIES OF THE ESCROW AGENT

Section 2.1.    Scope of Responsibility.    Notwithstanding any provision to the contrary, the Escrow Agent is obligated only to perform the duties specifically set forth in this Escrow Agreement, which shall be deemed purely ministerial in nature.    Under no circumstances will the Escrow Agent be deemed to be a fiduciary to Depositor or any other person under this Escrow Agreement.  The Escrow Agent will not be responsible or liable for the failure of Depositor to perform in accordance with this Escrow Agreement. The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Escrow Agreement, whether or not an original or a copy of such agreement has been provided to the Escrow Agent; and the Escrow Agent shall have no duty to know or inquire as to the performance or nonperformance of any provision of any such agreement, instrument, or document.  References in this Escrow Agreement to any other agreement, instrument, or document are for the convenience of the Depositor, and the Escrow Agent has no duties or obligations with respect thereto.  This Escrow Agreement sets forth all matters pertinent to the escrow contemplated hereunder, and no additional obligations of the Escrow Agent shall be inferred or implied from the terms of this Escrow Agreement or any other agreement.

Section 2.2.    Attorneys and Agents.    The Escrow Agent shall be entitled to rely on and shall not be liable for any action taken or omitted to be taken by the Escrow Agent in accordance with the advice of counsel or other professionals retained or consulted by the Escrow Agent.  The Escrow Agent shall be reimbursed as set forth in Section 3.1 for any and all compensation (fees, expenses and other costs) paid and/or reimbursed to such counsel and/or professionals.  The Escrow Agent may perform any and all of its duties through its agents, representatives, attorneys, custodians, and/or nominees.

Section 2.3.   <u>Reliance</u>. The Escrow Agent shall not be liable for any action taken or not taken by it in accordance with the direction or consent of the Depositor or his agents, representatives, successors, or assigns. The Escrow Agent shall not be liable for acting or refraining from acting upon any notice, request, consent, direction, requisition, certificate, order, affidavit, letter, or other paper or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons, without further inquiry into the person's or persons' authority. Concurrent with the execution of this Escrow Agreement, the Depositor shall deliver to the Escrow Agent authorized signers' form in the form of Exhibit B to this Escrow Agreement.

Section 2.4.   <u>Right Not Duty Undertaken</u>. The permissive rights of the Escrow Agent to do things enumerated in this Escrow Agreement shall not be construed as duties.

Section 2.5.   <u>No Financial Obligation</u>. No provision of this Escrow Agreement shall require the Escrow Agent to risk or advance its own funds or otherwise incur any financial liability or potential financial liability in the performance of its duties or the exercise of its rights under this Escrow Agreement.

## ARTICLE 3
### PROVISIONS CONCERNING THE ESCROW AGENT

Section 3.1.   <u>Indemnification</u>. The Depositor shall indemnify, defend and hold harmless the Escrow Agent from and against any and all loss, liability, cost, damage and expense, including, without limitation, attorneys' fees and expenses or other professional fees and expenses which the Escrow Agent may suffer or incur by reason of any action, claim or proceeding brought against the Escrow Agent, arising out of or relating in any way to this Escrow Agreement or any transaction to which this Escrow Agreement relates, unless such loss, liability, cost, damage or expense shall have been finally adjudicated to have been directly caused by the willful misconduct or gross negligence of the Escrow Agent. The provisions of this Section 3.1 shall survive the resignation or removal of the Escrow Agent and the termination of this Escrow Agreement.

Section 3.2.   <u>Limitation of Liability</u>. THE ESCROW AGENT SHALL NOT BE LIABLE, DIRECTLY OR INDIRECTLY, FOR ANY (I) DAMAGES, LOSSES OR EXPENSES ARISING OUT OF THE SERVICES PROVIDED HEREUNDER, OTHER THAN DAMAGES, LOSSES OR EXPENSES WHICH HAVE BEEN FINALLY ADJUDICATED TO HAVE DIRECTLY RESULTED FROM THE ESCROW AGENT'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, OR (II) SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES OR LOSSES OF ANY KIND WHATSOEVER (INCLUDING WITHOUT LIMITATION LOST PROFITS), EVEN IF THE ESCROW AGENT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSSES OR DAMAGES AND REGARDLESS OF THE FORM OF ACTION.

Section 3.3.   <u>Resignation or Removal</u>. The Escrow Agent may resign by furnishing written notice of its resignation to the Depositor, and the Depositor may remove the Escrow Agent by furnishing to the Escrow Agent a joint written notice of its removal along with payment of all fees and expenses to which it is entitled through the date of

sf-2529311

termination. Such resignation or removal, as the case may be, shall be effective thirty (30) days after the delivery of such notice or upon the earlier appointment of a successor, and the Escrow Agent's sole responsibility thereafter shall be to safely keep the Escrow Property and to deliver the same to a successor escrow agent as shall be appointed by the Depositor, as evidenced by a written notice filed with the Escrow Agent or in accordance with a court order. If the Depositor has failed to appoint a successor escrow agent prior to the expiration of thirty (30) days following the delivery of such notice of resignation or removal, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon the Depositor.

Section 3.4.   Compensation. The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached hereto as Exhibit C, which compensation shall be paid by the Depositor. The fee agreed upon for the services rendered hereunder is intended as full compensation for the Escrow Agent's services as contemplated by this Escrow Agreement; provided, however, that in the event that the conditions for the disbursement of funds under this Escrow Agreement are not fulfilled, or the Escrow Agent renders any service not contemplated in this Escrow Agreement, or there is any assignment of interest in the subject matter of this Escrow Agreement, or any material modification hereof, or if any material controversy arises hereunder, or the Escrow Agent is made a party to any litigation pertaining to this Escrow Agreement or the subject matter hereof, then the Escrow Agent shall be compensated for such extraordinary services and reimbursed for all costs and expenses, including reasonable attorneys' fees and expenses, occasioned by any such delay, controversy, litigation or event. If any amount due to the Escrow Agent hereunder is not paid within thirty (30) days of the date due, the Escrow Agent in its sole discretion may charge interest on such amount up to the highest rate permitted by applicable law. The Escrow Agent shall have, and is hereby granted, a prior lien upon the Escrow Property with respect to its unpaid fees, non-reimbursed expenses and unsatisfied indemnification rights, superior to the interests of any other persons or entities and is hereby granted the right to set off and deduct any unpaid fees, non-reimbursed expenses and unsatisfied indemnification rights from the Escrow Property.

Section 3.5.   Disagreements. If any conflict, disagreement or dispute arises between, among, or involving any of the parties hereto concerning the meaning or validity of any provision hereunder or concerning any other matter relating to this Escrow Agreement, or the Escrow Agent is in doubt as to the action to be taken hereunder, the Escrow Agent is authorized to retain the Escrow Property until the Escrow Agent (i) receives a final non-appealable order of a court of competent jurisdiction or a final non-appealable arbitration decision directing delivery of the Escrow Property or (ii) files an interpleader action in any court of competent jurisdiction, and upon the filing thereof, the Escrow Agent shall be relieved of all liability as to the Escrow Property and shall be entitled to recover attorneys' fees, expenses and other costs incurred in commencing and maintaining any such interpleader action. The Escrow Agent shall be entitled to act on any such agreement, court order, or arbitration decision without further question, inquiry, or consent.

sf-2529311

Section 3.6.   <u>Merger or Consolidation</u>.  Any corporation or association into which the Escrow Agent may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Escrow Agent is a party, shall be and become the successor escrow agent under this Escrow Agreement and shall have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

ARTICLE 4
MISCELLANEOUS

Section 4.1.   <u>Successors and Assigns</u>.  This Escrow Agreement shall be binding on and inure to the benefit of the Depositor and the Escrow Agent and their respective successors and permitted assigns.  No other persons shall have any rights under this Escrow Agreement.  No assignment of the interest of the Depositor shall be binding unless and until written notice of such assignment shall be delivered to the Escrow Agent and shall require the prior written consent of the Escrow Agent (such consent not to be unreasonably withheld).

Section 4.2.   <u>Escheat</u>.  The Depositor is aware that under applicable state law, property which is presumed abandoned may under certain circumstances escheat to the applicable state.  The Escrow Agent shall have no liability to the Depositor, his respective heirs, legal representatives, successors and assigns, or any other party, should any or all of the Escrow Property escheat by operation of law.

Section 4.3.   <u>Notices</u>.  All notices, requests, demands, and other communications required under this Escrow Agreement shall be in writing, in English, and shall be deemed to have been duly given if delivered (i) personally, (ii) by facsimile transmission with written confirmation of receipt, (iii) by overnight delivery with a reputable national overnight delivery service, or (iv) by mail or by certified mail, return receipt requested, and postage prepaid.  If any notice is mailed, it shall be deemed given five business days after the date such notice is deposited in the United States mail.  Any notice given shall be deemed given upon the actual date of such delivery.  If notice is given to a party, it shall be given at the address for such party set forth below.  It shall be the responsibility of the Depositor to notify the Escrow Agent in writing of any name or address changes. In the case of communications delivered to the Escrow Agent, such communications shall be deemed to have been given on the date received by the Escrow Agent.

sf-2529311

If to Depositor:

        Francisco Abellan
        C/ Turo de Monterols 11, 3° 1ª
        08006 Barcelona, Spain
        Telephone: 011 34 629 676 949
        Facsimile: 011 34 934 443 436

With a copy to:

        Craig D. Martin, Esq.
        Morrison & Foerster LLP
        425 Market Street
        San Francisco, CA 94105
        Telephone: 415-268-7681
        Facsimile: 415-268-7522

If to the Escrow Agent:

        U.S. Bank National Association
        One California St. Suite 2100
        San Francisco, CA 94111
        Attention:Sheila K. Soares
        Corporate Trust and Escrow Services
        Telephone: (415) 273-4582
        Facsimile:  (415) 273-4590

Section 4.4.   <u>Governing Law</u>.  This Escrow Agreement shall be governed by and construed in accordance with the laws of the State of California.

Section 4.5.   <u>Entire Agreement</u>.  This Escrow Agreement sets forth the entire agreement and understanding of the parties related to the Escrow Property.

Section 4.6.   <u>Amendment</u>.   This Escrow Agreement may be amended, modified, superseded, rescinded, or canceled only by a written instrument executed by the Depositor and the Escrow Agent.

Section 4.7.   <u>Waivers</u>.  The failure of any party to this Escrow Agreement at any time or times to require performance of any provision under this Escrow Agreement shall in no manner affect the right at a later time to enforce the same performance.  A waiver by any party to this Escrow Agreement of any such condition or breach of any term, covenant, representation, or warranty contained in this Escrow Agreement, in any one or more instances, shall neither be construed as a further or continuing waiver of any such condition or breach nor a waiver of any other condition or breach of any other term, covenant, representation, or warranty contained in this Escrow Agreement.

S-1

Section 4.8.   <u>Headings</u>.  Section headings of this Escrow Agreement have been inserted for convenience of reference only and shall in no way restrict or otherwise modify any of the terms or provisions of this Escrow Agreement.

Section 4.9.   <u>Counterparts</u>.  This Escrow Agreement may be executed in one or more counterparts, each of which when executed shall be deemed to be an original, and such counterparts shall together constitute one and the same instrument.

Section 4.10.   <u>USA Patriot Act Compliance</u>.  To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a trust or other legal entity the Escrow Agent will ask for documentation to verify its formation and existence as a legal entity.  The Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.  The Depositor agrees to provide all such information and documentation as to himself as requested by Escrow Agent to ensure compliance with federal law.

IN WITNESS WHEREOF, this Escrow Agreement has been duly executed as of the date first written above.

_____
Francisco Abellan
AS Depositor


U.S. BANK NATIONAL ASSOCIATION,
AS Escrow Agent

By: _____
Name: _____Sheila K. Soares____
Title: _____Vice President_____

S-1

## EXHIBIT A
## U.S. BANK NATIONAL ASSOCIATION
## MONEY MARKET ACCOUNT
## DESCRIPTION AND TERMS

The U.S. Bank Money Market account is an U.S. Bank National Association ("U.S. Bank") interest-bearing demand deposit account designed to meet the needs of U.S. Bank's Corporate Trust Services Escrow Group and other Corporate Trust customers of U.S. Bank. Selection of this investment includes authorization to place funds on deposit with U.S. Bank.

U.S. Bank uses the daily balance method to calculate interest on this account (actual/365 or 366) by applying a daily periodic rate to the principal balance in the account each day. Interest is accrued daily and credited monthly to the account. Interest rates are determined at U.S. Bank's discretion, and may be tiered based on customer deposit amount.

The owner of the account is U.S. Bank as Agent for its trust customers. U.S. Bank's trust department performs all account deposits and withdrawals. The deposit account is insured by the Federal Deposit Insurance Corporation up to $100,000.

## AUTOMATIC AUTHORIZATION

In the absence of specific written direction to the contrary, U.S. Bank is hereby directed to invest and reinvest proceeds and other available moneys in the U.S. Bank Money Market Account.

sf-2529311

**EXHIBIT B**
**CERTIFICATE AS TO AUTHORIZED SIGNATURES**

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of the Depositor and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under the Escrow Agreement to which this Exhibit B is attached, on behalf of the Depositor.

Name / Title                                    Specimen Signature

Francisco Abellan
Depositor
_____
Signature

Craig D. Martin
Partner, Morrison & Foerster LLP
_____
Signature

_____        _____
Name                                                    Signature

_____
Title

_____        _____
Name                                                    Signature

_____
Title

sf-2529311

**EXHIBIT C**
**FEES OF SCHEDULE FOR ESCROW**